Michael A. CUNNINGHAM, Plaintiff-Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant-
Respondent.†

Court of Appeals

*No. 83–445. Submitted on briefs October 11, 1983.—
Decided November 18, 1983.*
(Also reported in 342 N.W.2d 60.)

† Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Van Hecke & Mank, S.C.,* with *F.M. Van Hecke* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Foley & Lardner,* with *James O. Huber* and *Richard M. Esenberg* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

DECKER, J.   Michael Cunningham (Cunningham) appeals from a judgment that respondent Metropolitan Life Insurance Co., (Metropolitan) had a subrogated interest in the settlement proceeds of Cunningham's wrongful death action because the coverage of Metropolitan's policy constituted an indemnity policy.   Cunningham con-

tends that the policy is an investment policy and that, therefore, in the absence of an express subrogation clause, there is no subrogation by operation of law. We disagree and affirm, holding, in light of *Rixmann v. Somerset Public Schools,* 83 Wis. 2d 571, 266 N.W.2d 326 (1978), that the policy, *as used here to pay for medical expenses incurred,* is one of indemnity.

The case comes here on stipulated facts. Cunningham, as an employee of American Can Company, had insurance coverage for himself and his dependents under a group policy of life, accident and health, and medical and hospital benefits issued by Metropolitan. His daughter, Helene, was involved in a car accident which ultimately resulted in her death. Under the group hospitalization and medical expense provisions of the policy, Metropolitan paid money representing medical expenses incurred by Cunningham as a result of Helene's injuries. The group policy contains no express subrogation clause.

Cunningham made and settled a claim against, among others, the liability insurer of the auto in which Helene was riding. The parties here agreed that $20,000 of the proceeds of that settlement would be held in trust pending a judicial determination of the subrogation question.

Cunningham moved for summary judgment upon the agreed statement of facts. The trial court determined the policy to be one of indemnity and denied the motion. The parties then entered into a supplementary statement of facts wherein it was agreed that Cunningham had been made whole by Metropolitan's payments and the settlement proceeds in light of the trial court's determination that the policy was one of indemnity and that Metropolitan had subrogation rights. The trial court then ordered judgment for Metropolitan. Cunningham appeals.

Both parties rely heavily upon *Rixmann, supra,* for their respective positions. We are persuaded that, where

there is no express subrogation clause, *Rixmann* requires that the policy coverage be analyzed to determine if it is an investment policy or an indemnity policy. We conclude that the policy provisions employed here are of an indemnity nature and that, therefore, subrogation by operation of law is applicable. Accordingly, we affirm.

*Rixmann* explained the operation of subrogation in Wisconsin and clarified any confusion which might have arisen from certain language in *Heifetz v. Johnson,* 61 Wis. 2d 111, 211 N.W.2d 834 (1973). *Rixmann, supra* at 576, 266 N.W.2d at 329. *Heifetz* could have been read to suggest that "in any case in which the injured party has been compensated for his loss by his insurer, subrogation in favor of the insurer occurs." *Rixmann, supra* at 577, 266 N.W.2d at 329. The supreme court in *Rixmann* explained that the *Heifetz* language was dependent upon *Patitucci v. Gerhardt,* 206 Wis. 358, 240 N.W. 385 (1932), which itself made it clear that indemnity policies are subject to subrogation whether or not an express subrogation clause exists therein. *Id.* at 360–61, 240 N.W. at 385–86. *See also Rixmann, supra* at 577–78, 266 N.W.2d at 329–30.

We read *Rixmann* to hold that, in Wisconsin, indemnity policies are subject to subrogation regardless of express clauses. Relying upon the definitions for investment and indemnity policies found in *Rixmann* and older Wisconsin cases cited therein, we conclude that the policy provisions in question before us are indemnity, rather than investment, provisions. Accordingly, we affirm the judgment of the trial court.

The hallmarks of an indemnity contract are that the insurer's position is "analogous to that of a surety," *Patitucci, supra* at 361, 240 N.W. at 386, and that its purpose is to indemnify the assured "against *such loss as he may*

*have sustained* by reason of a specified hazard." *Id.* [Emphasis added.]

An investment contract, on the other hand, is "a stipulation to pay *a sum certain* upon the happening of a specified contingency." *Gatzweiler v. Milwaukee Electric Railway & Light Co.,* 136 Wis. 34, 37, 116 N.W. 633, 634 (1908). [Emphasis added.] "The money value of the thing covered by the insurance does not enter into the transaction at all." *Id.*

The investment-indemnity distinction, then, rests upon the measurement of liability. In an investment contract, the remuneration for the triggering event is measured and fixed by the contract itself and before the event occurs, e.g., a life insurance policy which pays a fixed amount upon the death of a person. *See id.* In an indemnity contract, on the other hand, the remuneration for the triggering event is dependent upon and measured by the extent of the insured's loss, e.g., a fire insurance policy which pays for whatever damage was occasioned by a fire. *See id.; see also* 1 G. Couch, Couch on Insurance § 1:16 (2nd ed 1959).

We look at the insurance policy in question to determine into which category it falls. We begin by noting that the construction of an insurance policy is a question of law to be redetermined independently on appeal.[1] *Paper Machinery Corp. v. Nelson Foundry Co.,* 108 Wis. 2d 614, 619, 323 N.W.2d 160, 163 (Ct. App. 1982).

It is undisputed on appeal that the benefits in question were paid out under the "Group Hospitalization and Physicians' Services Benefits Insurance Rider" and the

[1] We reject Metropolitan's argument that the trial court's determination that the policy was an indemnity, rather than an investment, policy is a finding of fact, especially in that the case comes to us on stipulated facts.

"Group Medical Expense Insurance-Extended Coverage" provision of the policy.[2]  Our review of these provisions makes it abundantly clear that the coverage is for the actual medical expenses incurred, within the limits of the policy.  As such, there can be little question that the coverage is indemnity coverage in that it indemnifies the insured from whatever *loss he sustained* from a specified hazard rather than, as in an investment contract, pays *a fixed sum upon the occurrence of a specified event.*  We . therefore agree with the trial court's conclusion that an indemnity provision was involved here.

Finally, we address Cunningham's contention that, in *Rixmann,* the supreme court determined there to be no subrogation by operation of law for medical expenses incurred.  While in *Rixmann* the supreme court did make a determination of no subrogation by operation of law, *Rixmann, supra* at 582, 266 N.W.2d at 332, it did so on three bases, none of which is applicable here.

---

[2] We reject Cunningham's argument that the policy should be construed as a whole and that construing it as such would result in a determination that it is an investment policy.  The policy also includes life insurance and accident and health insurance, as well as the named medical coverage.  While life insurance is viewed as an investment contract (*see Gatzweiler v. Milwaukee Elec. Ry. & Light Co.,* 136 Wis. 34, 37, 116 N.W. 633, 634 (1908)), as is accident insurance (*Patitucci v. Gerhardt,* 206 Wis. 358, 361, 240 N.W. 385, 386 (1932)), it is not claimed, however, that payment was made (or subrogation sought) under those provisions. An all-encompassing group policy such as this cannot, as a whole, be conveniently put in either the investment or indemnity category.  We therefore examine only those parts of the policy under which, according to the briefs and the record, claims paid are sought to be subrogated.  We further reject Cunningham's argument that the policy is an investment policy because dividends are paid under it.  No citation of authority is made for this contention, nor is it clear from the policy itself that the dividend provision is applicable to the medical coverage.

First, in *Rixmann,* the insurance contract in question was never made a part of the record. *Id.* Here, however, it was; and its pertinent parts demonstrate that they are indemnity, rather than investment, provisions.

Second, in *Rixmann,* because the policy was not part of the record, the supreme court at least implied that there was a failure by the one seeking to prove subrogation to introduce evidence to that effect. *Id.* Again, here, such is not the case.

Third, in *Rixmann,* the supreme court applied what it called the "traditional, pre-*Heifetz,* collateral source rule: 'An accident insurance policy, in the absence of any express provision in the policy to the contrary, is held to be an investment contract . . . [under which] the insurance company is not subrogated to the rights of the insured [upon payment].' *Patitucci v. Gerhardt, supra* at 361." *Id.* Here, however, it is clear that the policy provisions in question do not constitute accident insurance provisions. The medical provisions here indemnified the insured for such sums as were incurred; such is not true for an "accident policy":

> *By accident insurance is generally meant a contract whereby one* for a consideration *agrees* either to indemnify another against personal injury resulting from accident, or, in case death results, *to pay a fixed sum as compensation therefor; i.e., to indemnify the insured in the amount stipulated in case of bodily injury not resulting in death, and, in case death results from the injury, to pay a fixed compensation.* The intention is ordinarily that the contract shall apply to all cases of disability which are the natural and ordinary results of external injury.
>
> *Accident insurance is not a contract of indemnity, since the liability of the insurer is measured by the terms of its contract and not by the extent of the insured's loss,* except to the extent that the policy may contain provisions expressly indemnifying the insured for specified losses.

1 G. Couch, Couch on Insurance § 1:16 (2nd ed 1959) [Footnotes omitted; emphasis added.] For these reasons, we distinguish the facts in *Rixmann* from those before us. From the sketchy facts given in *Rixmann,* we are at a loss to explain how the dicta concerning "accident insurance" from *Patitucci, supra,* is pertinent to *Rixmann.* We acknowledge, however, that the *Rixmann* court was without benefit of the insurance policy in question, and we assume that there were circumstances in *Rixmann* not included in the opinion which led the supreme court to conclude that Rixmann's "medical expenses" were covered by a policy at least akin to "accident insurance." In any event, we reject Cunningham's implicit argument that the phrase, "medical expenses," alone is enough to mandate the application of the result in *Rixmann.*

The teachings of *Rixmann, Patitucci* and *Gatzweiler, supra,* can be summarized for the purposes of this case as follows:

1. An express subrogation clause in an insurance contract (conventional subrogation) always controls.

2. It is the burden of the claimed subrogee to prove subrogation.

3. Absent an express subrogation clause, an indemnity insurance contract provides an insurer the right to subrogation (legal subrogation); but an investment insurance contract denies the insurer the right to subrogation.

4. An indemnity insurance contract is characterized by an agreement to *reimburse* the insured for the particular loss sustained up to the amount of the policy limits. The insurer is analogous to a surety, and equitable principles therefore require his subrogation to the insured's claim against a third party.

5. An investment insurance contract is characterized by an agreement to pay the insured a *specific amount* upon the happening of a specified event. Presumably be-

cause both the *event and the amount to be paid* are specified in advance and enable the more specific calculation of risk of loss and the limits of liability, the insurance contract is construed as an investment of the insured. The insured is entitled to the benefits of his premium payment and because the amount paid does not necessarily reimburse him for the loss, equity does not require that the insurer be subrogated to a claim that may result in the absence of an express clause to that effect.

Accordingly, we hold that the applicable terms of the policy are indemnity rather than investment provisions under the rules set forth in *Rixmann, Gatzweiler* and *Patitucci.* As such, subrogation by operation of law is applicable here. *See Rixmann, supra* at 577–79, 266 N.W.2d at 329–30; *Heifetz, supra* at 124, 211 N.W.2d at 841. We affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.