Michael A. CUNNINGHAM, Plaintiff-Appellant-Petitioner,

v.

METROPOLITAN LIFE INSURANCE COMPANY,
Defendant-Respondent.

Supreme Court

*No. 83–445. Argued September 5, 1984.—
Decided January 3, 1985.*

(Also reported in 360 N.W.2d 33.)

438

For the plaintiff-appellant-petitioner there were briefs by *F.M. Van Hecke* and *Van Hecke & Mank, S.C.,* Milwaukee, and oral argument by *F.M. Van Hecke.*

For the defendant-respondent there was a brief by *James O. Huber, Richard M. Esenberg* and *Foley & Lardner,* Milwaukee, and oral argument by *Mr. Huber.*

Amicus curiae brief was filed by *D.J. Weis* and *Johnson, Weis & Paulson,* Rhinelander, for the Wisconsin Academy of Trial Lawyers.

WILLIAM A. BABLITCH, J. Michael Cunningham seeks review of a court of appeals' decision that Metropolitan Life Insurance Company (Metropolitan) was equitably subrogated to Cunningham's interest in the settlement proceeds of Cunningham's wrongful death action against third-party tortfeasors.

The court of appeals held that the applicable terms of Metropolitan's group policy which contained a "Group Hospitalization and Physicians' Services Benefits Insurance Rider" and a "Group Medical Expense Insurance-Extended Coverage" rider under which Cunningham received benefits for his daughter's care, constituted a contract of indemnity and not investment, and Metropolitan was therefore equitably subrogated to Cunningham's claims for that care. We hold that the specific language of Metropolitan's group medical expense insurance-extended coverage rendered that portion of the policy indemnity insurance and that an insurer who pays benefits under that portion of the policy is equitably subrogated to the insured's claims, notwithstanding the absence of an express subrogation clause. We further hold that the specific language of Metropolitan's group hospitalization and physicians' services insurance rendered that portion of the policy investment insurance, and in the absence of an express subrogation clause, the insurer who pays benefits under such an investment policy is not equitably subrogated to the insured's claims. Given that the record before this court fails to disclose what portion of Metropolitan's insurance proceeds were paid under each of the riders, and what portion of the settlement proceeds presently in trust were paid under each of the insurance categories, this court is unable

to determine to what extent Metropolitan is equitably subrogated to Cunningham's claims against third-party tortfeasors. We therefore remand to the trial court for further proceedings consistent with this opinion.

*Background*

The parties stipulated to the facts. On September 11, 1978, Helene Cunningham, the plaintiff's minor daughter, was involved in an automobile accident. She sustained serious injuries, for which she was hospitalized, and which ultimately resulted in her death four months later.

At the time of the accident, Michael Cunningham was employed by the American Can Company. As an employee, he and his dependents were covered under Metropolitan's group insurance policy which contained two riders: 1) "Group Hospitalization and Physicians' Services Benefits Insurance Rider" and 2) "Group Medical Expense Insurance-Extended Coverage". Metropolitan paid Cunningham $80,069 in benefits, representing medical expenses incurred by Cunningham, as a result of his daughter's injuries. Section Q–1(d) of the medical expense portion stated that:

"If benefits have been paid hereunder on account of services received by the Employee or by a Dependent and thereafter it is established that the charges for such services were not paid by the Employee or the Dependent, or said Employee or Dependent was otherwise reimbursed therefor, the Insurance Company shall be entitled to a refund of the amount of the benefits paid which is an excess of the benefits that would have been payable based on the actual charges incurred and paid by the Employee or the Dependent."

Section 1.(A)(7) of the hospitalization and physicians' services portion of the group policy provided that:

"The hospitalization benefits otherwise provided for any hospital confinement of the Employee shall be re-

duced by any benefits paid or payable on account of hospital confinement for the same period or any part thereof from any fund, other insurance, or other arrangement, provided or established in conformity with any state or other governmental disability or cash sickness or hospital benefits law."

The parties stipulated that the policy contained no express subrogation clause.

Cunningham made and settled claims for the wrongful death of his minor daughter against third-party tortfeasors, including the liability insurer of the automobile in which Helene was riding. The parties agreed that $20,000 of the settlement proceeds from the liability insurer would be held in a trust account pending a judicial determination of Metropolitan's subrogation rights. If subrogation rights were found to exist, the parties agreed that the $20,000 plus interest, less certain disbursements, would fully satisfy Metropolitan's claim. The policy was appended in its entirety to the agreed statement of facts.

On the basis of these stipulated facts, Cunningham moved for summary judgment. The court denied this motion on December 2, 1981, finding that the group policy was one of indemnity. The parties subsequently stipulated to a supplementary statement of facts in light of the trial court's determination that the policy was an indemnity contract and that Metropolitan had subrogation rights. It was agreed that Cunningham had been made whole by Metropolitan's payments, the settlement proceeds of the wrongful death claim, and further settlement proceeds from another contributing tortfeasor. An additional $5,248.75, representing 40 percent of another settlement from a contributing tortfeasor, was placed in the trust account. The trial court then ordered judgment for Metropolitan.

On Cunningham's appeal, the court of appeals affirmed the trial court's judgment. Relying on this court's decision in *Rixmann v. Somerset Public Schools*, 83 Wis. 2d 571, 266 N.W.2d 326 (1978), the court determined that the applicable provisions of the policy provided coverage "for the actual medical expenses incurred", rather than for a "fixed sum upon the occurrence of a specified event." *Cunningham v. Metropolitan Life Ins. Co.*, 116 Wis. 2d 331, 336, 342 N.W.2d 60 (Ct. App. 1983). Therefore, the court said, the policy was an indemnity contract, not an investment contract, and Metropolitan was equitably subrogated to the proceeds of Cunningham's tort recovery. *Id.* at 339.

Cunningham subsequently filed a petition for review, which was granted. The sole issue for review is:

Under the specific language in the group medical and the group hospitalization riders under which Metropolitan reimbursed Cunningham for his daughter's medical expenses, is Metropolitan subrogated to Cunningham's recovery of expenses from third party tortfeasors in the absence of an express subrogation clause? We hold that the medical expense rider of the policy was one of indemnity and that Metropolitan was equitably subrogated to the medical expense portion of Cunningham's recovery. We find, however, that the hospitalization rider of the policy was one of investment, and that Metropolitan has no subrogation rights as to this portion of Cunningham's recovery. The record before this court is devoid of any accounting which reveals how much Metropolitan paid under each of the insurance riders, and how much of the settlement proceeds were paid under each of the insurance categories. Therefore, we remand to the trial court for further proceedings consistent with this opinion.

Subrogation is an equitable remedy which operates when a victim of loss is entitled to recover from two

sources, one of whom bears a primary legal responsibility. If the secondary source pays the obligation, it succeeds to the rights of the party it has paid, against the third party, who was the primarily responsible party. *See* 1 G.E. Palmer, Law of Restitution sec. 1.5(b) (1978).

The doctrine of subrogation, when applied in the insurance context, deals with the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties, legally responsible to the insured, for a loss paid by the insurer to the insured. 16 G. Couch, Couch on Insurance 2d (Rev. ed.) sec. 61:1 (1983). If the insured has been compensated in full by the insurer for the loss sustained, and subsequently receives recovery from a third party, the insurer's right becomes a right to the proceeds if subrogation is found to apply. 16 G. Couch, sec. 61:29.

The purpose of subrogation is to place the loss ultimately on the wrongdoers. 3 J.A. Appleman, *Insurance Law and Practice,* sec. 1675 (1967, Supp. 1984); *First Nat. Bank of Columbus v. Hansen,* 84 Wis. 2d 422, 428–29, 267 N.W.2d 367 (1978). It also prevents the insured from recouping a windfall double recovery. 3 J.A. Appleman, sec. 1675. This court has acknowledged this purpose and has stated:

" '. . . . in the absence of this doctrine the insured might often recover more than a full indemnity, and to prevent such result the courts have adopted the rule that the insured shall be entitled to only one full indemnity for the injury sustained, and from this the doctrine of subrogation has arisen. As a general rule, therefore, applicable to insurance and indemnity contracts of all kinds, the insurer, on paying to the insured the amount of the loss on the property insured, is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the

loss. Likewise, where the tortious conduct of a third person is the cause of a loss covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated pro tanto by operation of law to whatever right the insured may have against the wrongdoer. The theory is that to permit the insured to receive payment from both the wrongdoer and the insured would be to give him double compensation for his loss, and that it would be unjust to compel the insurer to suffer the consequences of the wrongful act of another by permitting such wrongdoer to shield himself by the theory that the loss was covered by insurance.' " *D'Angelo v. Cornell Paperboard Products Co.*, 19 Wis. 2d 390, 401–02, 120 N.W.2d 70 (1963) (quoting 8 G. Couch, Couch on Insurance, sec. 1977, at 6590 (1st edition)).

An additional purpose which underlies the doctrine of subrogation is that it prevents the policy holder from receiving more than he or she bargained for from the contract of insurance. Commentators in the field have suggested that if the insurer has only contracted to indemnify the insured for losses incurred, denying the insurer subrogation rights in effect rewrites the policy and allows the insured to retain benefits not contracted for. Kimball & Davis, *The Extension of Insurance Subrogation*, 60 Mich. L. Rev. 841, 841–42 (1962). Other proponents of the subrogation doctrine assert that it returns the excess, duplicative proceeds to the insurer who can then recycle them in the form of lower insurance premiums. Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law*, 54 Calif. L. Rev. 1478, 1481–84 (1966).

Subrogation may exist by operation of law, i.e., equitable subrogation, or may arise by contract of the parties, i.e. conventional subrogation. G. Couch, *supra* at secs. 61:1, 61:2. The party who is seeking to prove subrogation has the burden of introducing evidence to

that effect. *Rixmann* at 582. *Karl v. Employers Ins. of Wausau,* 78 Wis. 2d 284, 302, 254 N.W.2d 255 (1977). See also, *Rennick v. Fruehauf Corp.,* 82 Wis. 2d 793, 264 N.W.2d 264 (1978).

This court has given effect to express subrogation clauses contained in insurance contracts, including medical and hospital expense insurance contracts. *Associated Hosp. Serv. v. Milwaukee A.M.I. Co.,* 33 Wis. 2d 170, 175, 147 N.W.2d 225 (1967). Where there is no express subrogation clause, however, the policy itself must be analyzed to determine whether it is a policy of investment or a policy of indemnity. *Rixmann* at 582; *Casey v. Palmer Johnson Inc.,* 506 F. Supp. 1361 (E.D. Wis. 1981).

If the contract is found to be one of indemnity, this court will allow the insurer to receive subrogation, even in the absence of an express subrogation clause. *Patitucci v. Gerhardt,* 206 Wis. 358, 240 N.W. 385 (1932). If the contract is found to be one of investment, this court will not permit the insurer to receive subrogation in the absence of an express subrogation clause. *Gatzweiler v. Milwaukee E.R. & L. Co.,* 136 Wis. 34, 38, 116 N.W. 633 (1908).

As we stated in *Gatzweiler:*

". . . . if such a company desires protection against loss caused by the wrongs of third persons who would ordinarily be liable they must do so by the contracts they make; that in the absence of a feature expressly making the policy of insurance an indemnity contract, it should not be regarded as such, but held to be an investment contract in which the only parties concerned are the insurer and the assured or the beneficiary." *Id.* at 39.

The *Rixmann* court clearly approved this holding when it expressly rejected the language in *Heifetz v. Johnson,*

61 Wis. 2d 111, 211 N.W.2d 834 (1973), which suggested that "in any case in which the injured party has been compensated for his loss by his insurer, subrogation in favor of the insurer occurs." *Rixmann* at 577.

The investment-indemnity contract distinction has historically turned upon more than merely the measurement of liability, whether it be measured by fixed sum or by the extent of the insured's loss. The availability of subrogation has generally depended on the type of coverage involved; courts have implied rights of subrogation under policies covering property damages, i.e. fire insurance and property insurance. *Frost v. Porter Leasing Corp.*, 436 N.E.2d 387, (Mass. 1982). *See generally* 3 J.A. Appleman, *supra* sec. 1675 at 495. The insurer's obligation under a property insurance policy is only viewed as a duty to indemnify the insured for actual loss. *Frost* at 389; 16 G. Couch, *supra* sec. 61:8. The insured's loss for property damage can generally be liquidated, and tort recovery is comparable, if not the same as the insurance coverage. *Frost* at 389.

Courts have not recognized implied rights of subrogation in the area of personal insurance, a category that has included life insurance benefits, medical expense and hospitalization benefits, and accident benefits. *Frost* at 390. E.g. *Publix Cab Co. v. Colorado Nat'l Bank*, 139 Colo. 205, 228–29 (1959); *Michigan Hosp. Serv. v. Sharpe*, 339 Mich. 357, 369–73 (1954); *Feaster v. Old Security Life Ins. Co.*, 87 N.J. Super. 339, 348–49 (1965), aff'd, 91 N.J. Super. 120 (1966); *Aetna Life Ins. Co. v. J.B. Parker & Co.*, 30 Tex. Civ. App. 521, 523 (1902). *See* 16 G. Couch, *supra*, sec. 61:9; 4 G.E. Palmer, *supra*, sec. 23.17(b); Kimball & Davis, *supra* at 849–51.

The case law cited above is summarized in 3 J.A. Appleman, *supra*, sec. 1675 at 495 as follows:

"In personal insurance contracts, however the loss is never capable of ascertainment. Life and death, health, physical well being, and such matters, are incapable of exact financial estimation. There are, accordingly, not the same reasons militating against a double recovery. The general rule is, therefore, that the insurer is not subrogated to the beneficiary's rights under contracts of personal insurance, at least in the absence of a policy provision so providing."

See also 73 ALR3d 1140, pp. 1142–43. This unwillingness to recognize legal subrogation in the area of personal injury may be based on the court's recognition that the insured's receipt of both tort damages and insurance benefits may not produce a duplicative result given that the insured is likely to have suffered intangible losses that are not indemnified by either the insurer or the third-party tortfeasor. E.g. Frost at 390; see Procaccia, Denying Subrogation in Personal Injury Claims: A Needed Change of Direction, 15 Wm. & Mary L. Rev. 93, 95 (1973); 4 G.E. Palmer, supra, sec. 23.16 at 441.

Our case law has not explicitly embraced the property versus personal insurance distinctions, but it has nonetheless proven to be entirely consistent with the general trends in each of these areas. We have recognized the indemnity character of personal insurance in Campbell v. Sutliff, 193 Wis. 370, 214 N.W. 374 (1927), but were unpersuaded that an indemnity contract was present in that case. In Campbell, the court held that the trial court did not err in instructing the jury that they should disregard the fact that the plaintiff had received payments under an accident insurance policy in assessing the plaintiff's damages. Citing Gatzweiler, the court stated:

"It is equally clear that the defendant is not entitled to have the damages reduced because the plaintiff

had purchased and paid for the right to *have indemnity* in case he sustained accidental injuries. The sums paid for such insurance are in the *nature of an investment,* which, like other investments made by the plaintiff, ought not to inure to the benefit of the defendant." *Campbell* at 374–75. (Emphasis added.)

More recently this court noted that injured persons who have all or part of their medical expenses paid by their insurance company may recover all medical expenses from third party tortfeasors because an *investment* quid pro quo is involved. *Thoreson v. Milwaukee & S. Transport Corp.,* 56 Wis. 2d 231, 244, 201 N.W.2d 745 (1972).

While Metropolitan argues that subrogation rights should be implied upon payments of benefits for medical and hospital expenses given the true indemnity nature of these types of contracts, this court has declined to do so in *Rixmann,* and we decline to do so now. The *Rixmann* court, like every court which has considered this question, was unwilling to find, in the absence of an express subrogation clause, and without the benefit of the policy in the record, that the insurer was subrogated to the extent of its payments made to the insured's rights to recover medical expenses from the third party tortfeasor. *Rixmann* at 582.

[7]

We read *Rixmann* to hold that when a policy is included in the record, the court must first look at the policy in question to determine into which category it falls. We reject Cunningham's argument, however, that the policy which includes life insurance, accident and health insurance, and medical coverage must be construed as a whole. We examine only those portions of the policy under which the insurer paid the insured for all of the medical expenses, including hospitalization,

and for which Metropolitan is presently seeking subrogation. We therefore limit our inquiry into the "Group Hospitalization and Physicians' Services Benefits Rider" issued in 1971 and the "Group Medical Expense Insurance-Extended Coverage" rider issued in 1973.

We begin by noting that the construction of an insurance policy is generally a question of law to be determined independently on appeal. *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 562, 278 N.W.2d 857 (1979). We further note that this state follows a policy of strict construction of insurance policies, resolving ambiguities against the insurer and in favor of the insured. *Stanhope v. Brown County*, 90 Wis. 2d 823, 849, 280 N.W.2d 711 (1979). Therefore, subrogation clauses and indemnity clauses must be strictly construed against the insurer in the event of any ambiguity or obscurity. *See United States Nat. Bk. of Or. v. American Home A. Co.*, 505 F.2d 742, 744 (9th Cir. 1974).

We conclude that the "Group Medical Expense Insurance-Extended Coverage" rider, issued in 1973, is one of indemnity. Therefore, Metropolitan is equitably subrogated to the extent of the payments it made under this rider to Cunningham's claims against third party proceeds paid under this policy. We base our conclusion on the express language of this rider which provides unambiguous language regarding the indemnity nature of this contract. The relevant language provides:

"If benefits have been paid hereunder on account of services received by the Employee or by a Dependent and thereafter it is established that the charges for such services were not paid by the Employee or the Dependent, or said Employee or Dependent was otherwise reimbursed therefor, the Insurance Company shall be entitled to a refund of the amount of the benefits paid

which is in excess of the benefits that would have been payable based on the actual charges incurred and paid by the Employee or the Dependent."

It is clear that the purpose of this rider was to indemnify the insured from whatever loss *he or a dependent* sustained by reason of a specified hazard. Metropolitan expressly contracted to receive a refund for reimbursements the insured received for medical expenses paid by Metropolitan under this rider for the insured's dependent's care.

If the above language were the only language in the group policy to be construed, our conclusion would be in agreement with the court of appeals. However, our review of the "Group Hospitalization and Physicians' Services Benefits Rider" leads us to conclude that this rider is one of investment.

Metropolitan, in its briefs before this court and the court of appeals, argues that "Metropolitan did unambiguously define the nature of its obligation in the policy." Supreme court brief of defendant-respondent at 15; court of appeals' brief of respondent at 15. In support of its position with respect to the "Group Hospitalization and Physicians' Services Benefits Insurance Rider", Metropolitan's briefs in both courts quoted language from that rider as follows: "[Section 1(A)(7) of the 'Group Hospitalization and Physicians Services Benefits' (Appendix, Exhibit A, p. 56)] provides that benefits payable pursuant to it 'shall be reduced by benefits paid or payable . . . from any fund, other insurance, or other arrangement.'" Supreme court brief of defendant-respondent at 14; court of appeals' brief of respondent at 14.

However, a reading of the language referred to in the rider itself indicates that a comma, rather than a period, follows the word "arrangement". The language in the policy actually reads:

"The hospitalization benefits otherwise provided for any hospital confinement of the *Employee* shall be reduced by any benefits paid or payable on account of hospital confinement for the same period or any part thereof from any fund, other insurance, or other arrangement, *provided or established in conformity with any state or other governmental disability or cash sickness or hospital benefits law."* (Emphasis added.)

The omitted language in the briefs ("provided or established in conformity with any state or other governmental disability or cash sickness or hospital benefits law.") contradicts the position of Metropolitan that "the policy itself makes clear that its purpose is to indemnify the insured only for those out-of-pocket losses which are not otherwise compensated." Supreme court brief of defendant-respondent at 14; court of appeals brief of respondent at 14. Quite to the contrary, the omitted language makes it clear that this rider is one of investment. We make this finding because Metropolitan has failed to put any evidence into the record which would demonstrate that the settlement proceeds came from a fund referred to in the omitted language. That language provides that any settlement funds would have to be "provided or established in conformity with any state or other governmental disability or cash sickness or hospital benefits law." The record does not disclose what type of fund or insurance or other arrangement the third-party tortfeasor's settlement came from. Nor does the record disclose whether the settlement came from a plan which is provided or established in conformity with any state or other governmental disability or cash sickness or hospital benefits law. Wisconsin does not have a state disability, cash sickness, or hospital benefits law, nor does it have laws through which these types of plans may be administered privately. The record merely indicates $20,000 of the trust came

from a private liability insurer of the automobile in which Helene was riding. Therefore, Metropolitan has not met its burden to produce sufficient evidence to prove legal subrogation.

Viewing the language of the hospitalization rider as a whole further substantiates our conclusion. The hospitalization benefits are only reduced if the initial proceeds are paid to provide payment for the hospital confinement of the *employee*. Nothing in this limitation paragraph permits Metropolitan to reduce benefits paid or payable on account of benefits paid for the hospital confinement of an insured employee's *dependent*. The definitions in the group policy specifically define employee and dependent separately. Thus, the limitation found in 1.A (7) is inapplicable as it applies to payments made for Helene Cunningham's hospital confinement. Additionally we note that the rider in 1973 for the Group Medical expenses coverage specifically provided for reimbursement to the insurer for duplicative benefits paid for the insured's dependent. Having failed to do so in the hospitalization rider but not in the medical expense rider, the omission of the word "dependent" does not appear to be unintentional. We conclude that the hospitalization and physicians' service rider is one of investment.

We are unable to determine, based on the record presently before us, how much of Metropolitan's insurance proceeds were paid under the Group Medical Expense rider for which Metropolitan is entitled to equitable subrogation, and how much of the proceeds were paid under the Group Hospitalization and Physicians' Services rider for which Metropolitan is not entitled to equitable subrogation. Nor are we able to determine how much of the trust proceeds were paid to

compensate Cunningham for medical expenses which Metropolitan had previously paid under its Group Medical Expense rider of the policy. We therefore remand to the trial court.

First, we direct the trial court to make a determination as to how much of the insurance benefits were paid for medical expenses, for which there is equitable subrogation, and how much of the insurance benefits were paid for the hospitalization and physicians' services, for which there is no equitable subrogation. We note that section Q–1(D) of the Group Medical Expense Insurance-Extended Coverage policy expressly states that:

"Expenses incurred for any of the following shall in no event be considered Covered Medical Expenses:

" . . . .

"(q) Covered Medical Expenses to the extent benefits are provided under the provisions of the Employer's basic group hospitalization and physicians' services plans."

We also direct the trial court to make a determination as to how much of the settlement proceeds were paid to compensate Cunningham for medical expenses, which were previously paid by Metropolitan under the Group Medical Expense rider. This determination is essential because legal subrogation gives indemnity only; the insurer is only entitled to that part of the tort recovery which the insurer is able to establish was paid in compensation for the same loss. G.E. Palmer, *supra* at sec. 23.16 at 444. An insurer who possesses a cause of action for subrogation cannot recover beyond the amount actually dispersed by it. *D'Angelo* at 402. Nor can it recover from any source unless the settlement from that source actually compensates the insured for the same specific loss the insurer previously compensated it for. G.E. Palmer sec. 23.15 at 440. "If there is any doubt as to the facts, the doubt should be resolved in favor of the tort victim." *Id.*

In reaching the result we have, we note that controversies such as this one would not arise had the parties included an express subrogation clause in the insurance contract. We have held that an express subrogation clause in a medical insurance contract effectively serves to assign an insured's claim to his insurer. *See, e.g., Associated Hosp. Serv., supra.*

Nevertheless, we decline to dispose of our long standing doctrine of equitable subrogation. Where it can be clearly and unequivocally determined that an insurance contract requires only that the insurer make whole the insured, then the insurer is subrogated *pro tanto* to the insured's claims against third parties. *Patitucci* at 361; *Gatzweiler* at 39. To rule otherwise would vitiate the agreement between the insurer and the insured. The right to equitable subrogation rests on the fact that the insured bargained only for indemnification of his out-of-pocket losses. Thus, the doctrine of equitable subrogation serves to promote the expectations of the parties.

Moreover, the doctrine helps to facilitate sound distribution of compensation resources. Nowhere is the need for cost control more pressing than in the field of hospitalization and medical insurance. Where a hospitalization or medical insurance policy clearly promises to indemnify the insured only for out-of-pocket losses, then the equitable subrogation doctrine serves to make the health care payment system more efficient.

*By the Court.*—The opinion of the court of appeals is affirmed in part, and reversed in part, and the cause remanded to the circuit court for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (concurring in part and dissenting in part). The parties have stipulated that

the policy in question contains no express subrogation provision. P. 442, *supra.* Were such a provision contained in the policy, it probably would have been given effect. *Associated Hospital Service, Inc. v. Milwaukee Automobile Mutual Insurance Company,* 33 Wis. 2d 170, 147 N.W.2d 225 (1967).

The insurance policy before the court is a single group policy of insurance incorporating multiple coverages—life, accident and health, hospitalization and physicians service benefits insurance and medical expense insurance extended coverage. It is a participating contract under which the employer may receive dividends. This court has not previously analyzed such a policy in terms of the doctrine of equitable (a/k/a legal) subrogation which evolved in an earlier era of insurance.

A primary function of the doctrine of equitable subrogation is to prevent an insurer from paying and an insured from receiving more than the parties bargained for in the contract of insurance. The determinative question in each case is whether the policy should be interpreted to mean that the insurer will reimburse the insured for losses not otherwise compensated or will reimburse the insured upon the occurrence of an event, notwithstanding that the loss associated with that event may be reimbursed from some other source. The indemnity/investment analysis of the policy used by the majority is a means of deciding this question.

The distinction between indemnity and investment contracts for purposes of determining legal subrogation is a tenuous one, and courts have been viewed as inept in applying it. Kimball and Davis, *The Extension of Insurance Subrogation,* 60 Mich. L. Rev. 841 (1962). This case demonstrates the futility of attempting to fit today's multitude of policies into indemnity/investment

boxes.[1] Courts should not be reviewing each coverage in the myriad of multiple coverage health insurance policies to determine the insurance company's right to subrogation.

On the facts presently before the court, I would hold that in the absence of an express subrogation clause, the insurance company has no subrogation rights. If the insurance company desires subrogation in this kind of policy, it should disclose its intent to assert subrogation rights through express policy language. *Cf. Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 358 N.W.2d 266 (1984). When subrogation rights are expressly set forth in the policy, the premiums can then be calculated properly, and the opportunity for either the insured or the insurer to receive a windfall is minimized.

If the court were to adopt the result I reach, it should come as no surprise to the insurance industry. From our prior cases, insurance companies know: first, that certain express subrogation clauses used by insurance companies writing medical and expense payment coverage and medical payment coverage have been held

---

[1] As the insurer implies (Brief, p. 17.), and as the majority apparently holds (p. 440, *supra*), different provisions of the policy may dictate different resolutions of the indemnity/investment question necessary to a determination of equitable subrogation. The majority's language that only portions of the policy are examined, and not the policy as a whole, pages 449, 450, *supra*, to determine the nature of the diverse coverages and the intent of the parties, if read literally, contravenes the generally accepted doctrine of contract interpretation. This language should not, I believe, be read literally. I believe it is the intent of the majority to state that it need not label the policy in toto as either an indemnity or an investment contract. Rather, it can consider each type of coverage in the policy independently, examining the policy provisions applicable to that coverage as well as the policy provisions applicable to all coverages.

valid;[2] second, that a company's failure to include an express subrogation clause puts the company at the risk of a court's affixing the label "investment" to the policy, thereby deciding that the company has no subrogation rights; and third, that "this state follows a policy of strict construction of insurance policies, resolving ambiguities against the insurer and in favor of the insured." P. 450, *supra*.

For the reasons set forth, I concur in part and dissent in part.

STEINMETZ, J. (dissenting). I disagree with the result and reasoning of the majority in this case. I believe it is significant that the policies were before the trial court and the court of appeals and that at no level of judicial review have the parties referred to specifically or relied on the select provisions of the policy that are relied on by the majority. I believe the policies must be looked at as a total contract. This was the view of the court of appeals also.

I would adopt as the decision in this case the one written by the court of appeals and found at *Cunningham v. Metropolitan Life Ins. Co.*, 116 Wis. 2d 331, 342 N.W.2d 60 (Ct. App. 1983).

---

[2] *Associated Hospital Service, Inc. v. Milwaukee Automobile Mutual Insurance Co.*, 33 Wis. 2d 170, 174–75, 147 N.W.2d 225 (1967).