MONART MOTORS COMPANY, Appellant, vs. HOME INDEM-NITY COMPANY, Respondent.

*September 12—October 8, 1957.*

602

For the appellant there were briefs by *Hanley, Wedemeyer & Petersen,* attorneys, and *Robert F. Cavanaugh* of counsel, all of Milwaukee, and oral argument by *Mr. Cavanaugh.*

For the respondent there was a brief by *Fairchild, Foley & Sammond,* and oral argument by *David E. Beckwith* and *J. G. Hardgrove,* all of Milwaukee.

FAIRCHILD, J. Because we reach the conclusion that the circuit court should have overruled Monart's demurrer to the first affirmative defense and ordered judgment dismissing the complaint, it will be unnecessary to discuss the propriety of the circuit court's action in directing a verdict for defendant.

Apparently the parties agreed that the circuit court, in ruling upon the demurrer, should have the county court file before it. It appears that the assets of the Boeing estate were not of great value. The petition for administration made by Monart alleges that the value of the assets did not exceed $1,000. A later petition by Boeing's mother asked for appointment of an administrator different from the one nominated by Monart and asserted that the value did not exceed $15,000 and the court so found when it appointed the administrator and specified the amount of the bond. The record suggests, at least, that in large measure the two petitioners had the same property in mind, but place different valuations upon it. One portion consisted of household furniture which Monart had caused to be sold for $1,000. The administrator collected life insurance proceeds and a bank balance which totaled $1,009.42. We gain the impression that Monart's practical purpose in prosecuting the claim may have been simply to establish its right to retain the proceeds of the sale.

The hearing on the objection to the claim took place June 22, 1955. Monart's auditor testified and his report was admitted in evidence. There was testimony by two of Monart's officers and by Bruno. While the evidence submitted by Monart in county court did not include the testimony of several employees and customers nor certain documents which were presented at the trial in circuit court, it was offered to establish the alleged defalcation. At the close of testimony in county court the administrator moved that the claim be allowed only at the amount of the unpaid checks on "the grounds that the rest of the claim has not been proved." The court orally granted the motion and entered an order disallowing the portion of the claim beyond the amount of the checks. The recitals at the beginning of the order set forth "the evidence on the part of the claimant

having been fully presented and no evidence having been presented by the administrator." Findings of fact were also set forth. There was no finding that defalcation did not occur, but there was one that "no competent evidence" of any liability other than that on the checks had been presented.

Home Indemnity argues that because of the relationship existing between it and Monart under the bond, the disallowance of the claim by the county court determines Monart's claim against Home Indemnity. This is said to be true because if Home Indemnity paid Monart under the bond, it would acquire a right against the estate by subrogation; where Monart has attempted to establish a claim against the estate and suffered an adverse determination, it has had its day in court and, having failed to establish any claim, is concluded from establishing the same facts in an action against Home Indemnity.

On the other hand it is Monart's position (1) that the county court did not have jurisdiction to determine the claim because it was for a tort and (2) that the disallowance was in any event only a nonsuit and did not bar a subsequent action on the same cause.

It is true that the county court would not have had jurisdiction of a purely tort action. But it has been established that, where the facts which give rise to a tort cause of action against a decedent are also the basis of a cause of action upon implied contract, plaintiff may waive the tort and proceed upon the implied contract by filing a claim in county court. *Payne v. Meisser* (1922), 176 Wis. 432, 440, 187 N. W. 194; *School District v. Brennan* (1940), 236 Wis. 91, 294 N. W. 558. In the latter case, a school district brought action to recover funds allegedly converted by its deceased treasurer. The court conceded it could have filed its claim in county court although it was not required to.

A claim against an estate is a proper remedy for alleged conversion. *Estate of Abddulah* (1934), 214 Wis. 336, 341, 252 N. W. 158.

We do not view the order of the county court as a dismissal without prejudice. The order did not specify that it was without prejudice, and that effect would need to be given, if at all, by implication from the fact that the court orally and in its findings spoke in terms of insufficiency of the evidence to establish the claim, rather than in terms of resolving conflicts in evidence.

*Gale v. Best* (1865), 20 Wis. *44, was an action in circuit court. Defendant proved the disallowance of the same claim in county court. Plaintiff attempted to prove that the disallowance was based on the ground that the nature of the claim required that it be prosecuted in circuit court. This court said (p. *47) : "It is very clear to us that the adjudication of the county court upon this claim is a bar to this action. That court had full authority, under the statute, to allow the claim . . . ; and if it decided adversely to the appellant, he had an ample remedy by appeal. . . . It is quite immaterial what reason the county court gave for its decision. . . . But so long as the decision of the county court stands unreversed, it concludes the parties upon the matter there adjudicated."

We have no doubt that were Monart or Home Indemnity (after subrogation) to sue the administrator in circuit court to recover for Boeing's alleged defalcation, the disallowance of the claim by the county court would be a complete bar.

Is the barring of any recovery from the Boeing estate fatal to the maintenance of the action against Home Indemnity? A release given to the administrator by Monart would prevent recovery from Home Indemnity because the release would destroy Home Indemnity's right to recover from the administrator if it made payment to Monart. *Sims v. Mutual Fire Ins. Co.* (1899), 101 Wis. 586, 77 N. W.

908. Where action is brought against a principal and results in judgment in his favor on the merits of the claim, that judgment would be a complete bar to an action against the surety. Dictum in *Stephens v. Shafer* (1879), 48 Wis. 54, 60, 3 N. W. 835. Restatement, Security, p. 372, sec. 139 (1).

The trial court commented that the value of assets in the estate was small, and we have considered whether this fact could in any way supply a reason for disregarding the disallowance of the claim in county court. Plaintiff's complaint asks recovery of the full amount of its loss, $52,693.70, but also discloses, as does the bond, that the limit of recovery would be $5,000 with respect to each employee named in the complaint plus an additional $5,000 with respect to Bruno, or a total of $20,000. Home Indemnity would not be entitled to any money recovered from the estate (and from the other employees) until Monart had been fully paid for its entire loss. A clause of the bond, as well as general principles of subrogation, so provides. 50 Am. Jur., Subrogation, pp. 702, 704, secs. 28, 30; *Hamill v. Kuchler* (1931), 203 Wis. 414, 232 N. W. 877, 234 N. W. 879. Thus it is apparent that if the full amount of the alleged loss were proved and $20,000 paid on the bond, Home Indemnity would never be entitled to any reimbursement until more than $32,000 had been recovered from the estate and other employees involved. Whatever the improbability of such recovery, it is not legally impossible and we can find no principle under which improbability of collection would authorize us to disregard the adverse determination in county court. It must also be recognized that Monart might establish only a portion of the loss it claims. If the amount established were less than the limit of liability in the bond, so that Home Indemnity would pay the full amount of the loss, any recovery from the estate, however small, would inure to its benefit.

Because of the existence in this case of the right of subrogation, it is not necessary to consider the application of the principle set forth in Restatement, Judgments, p. 493, sec. 99: "A valid judgment on the merits and not based on a personal defense, in favor of a person charged with the commission of a tort or a breach of contract, bars a subsequent action by the plaintiff against another responsible for the conduct of such person if the action is based solely upon the existence of a tort or breach of contract by such person, whether or not the other person has a right of indemnity."

We are mindful of the fact that the bond would entitle Monart to recover up to $10,000 for loss due to any ·dishonest acts of Bruno and up to $5,000 more for loss due to any dishonest act it could prove on the part of any other employee. We have considered whether the disallowance of the claim against Boeing is only a partial defense and should merely reduce the maximum recovery by the $5,000 limitation in force as to his acts. We observe from the complaint that Monart claims that the other employees merely aided and abetted Boeing and "made possible the conversion of the sum by Arthur Boeing." The gist of its claim that loss occurred as a result of the acts of Boeing, Bruno, and Hart is that Boeing took Monart's money. It is the same fact which it had to establish in order to succeed on its claim against the Boeing estate. If Boeing did not take Monart's money, the entire foundation of its present action against Home Indemnity is destroyed. Once we have determined that the disallowance of the claim against the estate is binding on Monart as a determination that Boeing did not take its money, we cannot reasonably say that Monart is free to prove in this action that he did take it, even if recovery were limited to the amounts allowed for the dishonest acts, if proved, of other employees.

It follows that the circuit court should have overruled the demurrer to the first affirmative defense, and all the facts

alleged in the defense being of record before it, should have dismissed the complaint. The same result was accomplished by a longer route.

Respondent applied for costs for printing pages of its brief in excess of 50. Appellant asserted on oral argument that respondent's brief and appendix were late. No proof of service is on file as required by Supreme Court Rule 44. Therefore respondent is not entitled to costs for any of its printing.

*By the Court.*—Order sustaining demurrer reversed; judgment affirmed. No printing costs to be taxed.