Justin L. RUCKEL, Plaintiff-Respondent,

v.

Troy W. GASSNER, Defendant-(In T.ct.),

HUMANA, INC., Defendant-Appellant.

Supreme Court

*No. 00–2036. Oral argument November 5, 2001.—Decided June 21, 2002.*

2002 WI 67

(Also reported in 646 N.W.2d 11.)

For the defendant-appellant there were briefs (in the court of appeals and the supreme court) by *Ward I. Richter, Johnathan T. McCaskill, Sheila M. Sullivan* and *Bell, Gierhart & Moore, S.C.,* Madison, and oral argument by *Sheila M. Sullivan.*

For the plaintiff-respondent there was a brief (in the court of appeals) by *Robert E. Storck* and *Storck, Schnabl & Madden,* Mayville, and oral argument by *Patrick O. Dunphy.*

An amicus curiae brief was filed by *Edward E. Robinson* and *Cannon & Dunphy, S.C.,* Brookfield, and *Brian H. Sande* and *Doar, Drill & Skow, S.C.,* Baldwin, on behalf of the Wisconsin Academy of Trial Lawyers, and there was oral argument by *Patrick O. Dunphy.*

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1999–2000).[1] It is an appeal of a judgment of the Circuit Court for Dodge County. Circuit Judge Andrew P. Bissonnette applied the "made whole" doctrine to a self-funded group insurance benefit plan to preclude the plan from recovering money paid by a tortfeasor to the plan's insured before the insured was fully compensated for his damages.

¶ 2. The issue framed by the court of appeals is whether the parties to an insurance contract may override the made whole doctrine by expressly stating in the insurance contract the intention to do so. Specifically, may the parties to an insurance contract override or negate the made whole doctrine by writing specific, unambiguous contractual language stating

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

that the insurer's rights to subrogation are superior to the insured's right to be made whole?

¶ 3. We accepted certification to clarify any perceived inconsistency between our decisions in *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 546–47, 253 N.W.2d 512 (1977), in which we held that the made whole doctrine applied because the insurance contract contained no language to the contrary, and *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982), in which we concluded that, under Wisconsin law, one who claims subrogation rights is barred from any recovery unless the insured is made whole.

¶ 4. The circuit court in this case rejected the insurer's position that it had a contractual right to recover medical expenses it paid to its insured even though the insured was not made whole. The court followed the *Garrity* and *Rimes* cases, determining that a subrogation clause in an insurance contract may not override the made whole doctrine no matter how clearly and explicitly the clause states the parties' intention to do so. We agree with the circuit court and hold that an insured must be made whole before the insurer may exercise subrogation rights against its insured, even when unambiguous language in an insurance contract states otherwise.[2] Consequently, we affirm.

## FACTUAL BACKGROUND

¶ 5. On February 20, 1999, Justin Ruckel, then 18 and still in high school, was shot in the knee while visiting the apartment of Troy Gassner. The accident

---

[2] This holding is not applicable to a situation in which Congress or the state legislature has statutorily determined subrogation rights in a way that negates the made whole doctrine. *See* ¶ 42 n.7, *infra.*

occurred when Gassner recklessly mishandled a .44 caliber handgun causing it to discharge. Ruckel's injury required multiple surgeries and led to significant permanent disability. Gassner was subsequently convicted of violating Wis. Stat. § 941.30(1), for recklessly endangering another's safety under circumstances showing utter disregard for human life.

¶ 6. Gassner had no liability insurance. However, Ruckel was covered under his mother's insurance with the Mayville School District (District), her employer. The District has a self-funded group insurance benefit program, administered by Humana/Employers Health Insurance Company (Humana). The program or plan includes health insurance.

¶ 7. Six months after the accident, Ruckel brought suit against Gassner for negligent and intentional torts. He sought compensatory damages for pain and suffering, past and future medical expenses, loss of income, and permanent injury, as well as punitive damages, costs, and disbursements. The suit also named Humana as a defendant because of its possible subrogation interests. By the time the circuit court heard the case, Humana had paid out $86,626.01 for Ruckel's medical expenses.

¶ 8. Gassner did not file an answer. Humana did file an answer and a cross-claim seeking to recoup all its expenditures on behalf of Ruckel.

¶ 9. Humana subsequently moved for a declaratory judgment, asserting that the made whole doctrine did not apply and that Humana's "contractual right to repayment takes priority over" Ruckel's recovery rights. Humana claimed that it was entitled to recover the $86,626.01 in medical expenses it paid on behalf of Ruckel, before Ruckel received any money from Gassner. Humana relied on language in the subrogation

clause of the insurance contract. The clause stated in part: "The Plan shall be repaid the full amount of the covered expenses it pays" and "[Humana's] right to repayment is, and shall be, prior and superior to the right of any other person or entity including the beneficiary" (emphasis omitted).

¶ 10. The circuit court held a hearing on April 24, 2000, to decide the priority of any proceeds between Ruckel and Humana and to determine the cause of Ruckel's injury, including his own negligence, if any, and the amount of his damages. At the hearing, the court determined that pursuant to *Garrity* and *Rimes,* the subrogation clause in Humana's insurance contract is not applicable until the insured is made whole.

¶ 11. On May 8, 2000, the circuit court entered default judgment against Gassner, finding that Gassner's reckless conduct was "the sole cause of the injuries" suffered by Ruckel.[3] The court calculated that Ruckel's damages totaled $459,831.26 and that Ruckel was entitled to damages of $373,205.25 from Gassner. The court further stated that "following payment of said $373,205.25, any payments made after that shall accrue to be paid toward the judgment [granted to] Humana, Inc. in the amount of $86,626.01."

¶ 12. Humana appealed, and this court accepted certification by the court of appeals.

## ANALYSIS

■

¶ 13. The issue in this case is whether the made whole doctrine applies when an insurance contract

---

[3] The determination that Gassner's reckless conduct was solely responsible for Ruckel's injuries removes any consideration of contributory negligence in this case.

unambiguously states that the insurer's subrogation rights are superior to the insured's right to be made whole. The application of the made whole doctrine to undisputed facts is a question of law which we review de novo. *Oakley v. Wis. Fireman's Fund,* 162 Wis. 2d 821, 826, 470 N.W.2d 882 (1991).

¶ 14. Black's Law Dictionary defines "subrogation" as: "The substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Black's Law Dictionary* 1440 (7th ed. 1999). This substitution of one party for another rests upon the equitable principle that one (other than a volunteer) who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid, and be subject to the defenses of the wrongdoer. *Garrity,* 77 Wis. 2d at 541 (citing *Employers Ins. of Wausau v. Sheedy,* 42 Wis. 2d 161, 170, 166 N.W.2d 220 (1969); *Interstate Fire & Cas. Co. v. City of Milwaukee,* 45 Wis. 2d 331, 334, 173 N.W.2d 187 (1970)).[4]

¶ 15. Subrogation also rests upon the equitable principle that a creditor or an insured is not entitled to double recovery. *Rimes,* 106 Wis. 2d at 272. Hence, the law invokes subrogation to avoid unjust enrichment.

---

[4] "The subrogation doctrine [] advances an important policy rationale underlying the tort system. It forces a wrongdoer who has caused a loss to bear the burden of reimbursing the insurer for indemnity payments made to its insured as a result of the wrongdoer's acts and omissions." *Ives v. Coopertools,* 208 Wis. 2d 55, 65, 559 N.W.2d 571 (1997) (Geske, J., concurring) (citing Elaine M. Rinaldi, *Apportionment of Recovery Between Insured and Insurer in a Subrogation Case,* 29 Tort. & Ins. L.J. 803 (1994)).

*New Amsterdam Cas. Co. v. Acorn Prods. Co.,* 42 Wis. 2d 127, 132, 166 N.W.2d 198 (1969) (quoting *Perkins v. Worzala,* 31 Wis. 2d 634, 637, 143 N.W.2d 516 (1966)); *Kennedy-Ingalls Corp. v. Meissner,* 5 Wis. 2d 100, 105, 92 N.W.2d 247 (1958).[5]

¶ 16. Ordinarily, subrogation does not arise until the creditor's debt or the insured's loss has been fully paid. *Garrity,* 77 Wis. 2d at 541 (citing *Hamill v. Kuchler,* 203 Wis. 414, 425, 232 N.W. 877 (1931); *Monart Motors v. Home Indemnity Co.,* 1 Wis. 2d 601, 607, 85 N.W.2d 478 (1957)); *see also,* 4 *Williston on Contracts* § 1269 (3d ed. 1967). In insurance law, this principle is sometimes referred to as the antisubrogation rule. *Black's Law Dictionary* 92 (7th ed. 1999). In Wisconsin, it is known as the made whole doctrine. *Garrity,* 77 Wis. 2d at 538, 541, 547.

¶ 17. The made whole doctrine in an insurance context is discussed in *Couch on Insurance,* which describes it as a "traditional equity principle" under which a party claiming subrogation rights may not recover until the insured is fully compensated for his or her losses. Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 223:133 (3d ed. 2000) [hereinafter *Couch on Insurance*]. "[T]he burden of loss should rest on the party paid to assume the risk, and not on an inadequately compensated insured." *Id.* § 223:136. Once the insured has been fully compensated, however, any ad-

---

[5] "Although an insured is entitled to indemnity from its insurer pursuant to coverage provided under a policy of insurance, the insured is entitled only to be made whole, not more than whole. Subrogation prevents an insured from obtaining one recovery from the insurer under its contractual obligations and a second recovery from the tortfeasor under general tort principles." *Ives,* 208 Wis. 2d at 65 (Geske, J. concurring).

ditional recovery by the insured would constitute unjust enrichment. *Id.* The subrogated party is therefore entitled to assert its subrogation claim once the insured has been made whole. *Id.*

■

¶ 18. "The right of subrogation can arise by statute, through equity or by contract." *Dailey v. Secura Ins. Co.,* 164 Wis. 2d 624, 628, 476 N.W.2d 299 (Ct. App. 1991). Subrogation arising from contract is usually termed "conventional subrogation." *American Ins. Co. v. City of Milwaukee,* 51 Wis. 2d 346, 351, 187 N.W.2d 142 (1971). "One example of 'conventional subrogation' is involved where health insurance contracts contain provisions for subrogation of payments made to the insured, when the insured is injured by negligent acts of a third person." *Id.*

¶ 19. This case concerns such a provision in the group insurance plan administered by Humana. The subrogation clause states:

Reimbursement/Subrogation

The beneficiary agrees that by accepting and in return for the payment of covered expenses by the Plan in accordance with the terms of this Plan:

1. The Plan shall be repaid the full amount of the covered expenses it pays from any amounts received from others for the bodily injuries or losses which necessitated such covered expense . . . .

2. The Plan's right to repayment is, and shall be, prior and superior to the right of any other person or entity, including the beneficiary.

3. The right to recover amounts from others for the injuries or losses which necessitate covered ex-

> penses is jointly owned by the Plan and the beneficiary. The Plan is subrogated to the beneficiary's rights to that extent. Regardless of who pursues those rights, the funds recovered shall be used to reimburse the Plan as prescribed above; . . . The rights to which the Plan is subrogated are, and shall be, prior and superior to the rights of any other person or entity, including the beneficiary (emphasis omitted).

¶ 20. Humana asserts that these contractual provisions are specific and unambiguous and override the made whole rule. It contends that these explicit provisions entitle Humana to reimbursement of the covered expenses which it paid on behalf of Justin Ruckel, regardless of whether Ruckel is ever fully compensated for his injuries.

¶ 21. This court addressed similar arguments in *Garrity,* 77 Wis. 2d 537, and in *Rimes,* 106 Wis. 2d 263. In *Garrity,* George and Helen Garrity (the insured) had a fire insurance policy issued by Rural Mutual Insurance Company (Rural Mutual). The limit of their policy was $67,227.12. When the insured suffered a fire loss at their dairy barn and other property—a loss totaling approximately $110,000—Rural Mutual paid the couple the policy limit of $67,227.12. *Garrity,* 77 Wis. 2d at 539.

¶ 22. The fire was allegedly caused by the negligence of a driver who worked for Bowers Brothers Feed Mill (Bowers). Bowers had a $25,000 liability policy issued by the same insurer, Rural Mutual, and Bowers and the insurer agreed to pay claims under this policy if they were found liable. *Id.*

¶ 23. The insured sued Bowers and named Rural Mutual as a defendant in the suit. As a defendant, Rural Mutual denied negligence on the part of Bowers. It also filed a third-party complaint against itself in its capac-

ity as insurer for the Garritys, asking that Rural Mutual pay to itself any amount that Bowers owed the Garritys under Bowers' $25,000 policy. *Id.* at 539–40. Rural Mutual based this claim against itself on the subrogation clause in the insured's standard policy: "Subrogation. This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company." *Id.* at 540.

¶ 24. In the *Garrity* decision, this court stated the question as follows:

> The question is: When an insured's loss exceeds the amount recoverable under a standard fire insurance policy written in conformity with section 203.01, Wis. Stats, 1969, what are the respective rights of the insured and the subrogated insurer to the damages recovered from the tort-feasor who caused the loss?

*Id.* at 538.

¶ 25. The circuit court ruled that Rural Mutual's subrogation clause, approved by reference in Wis. Stat. § 203.01 (1969–70), gave Rural Mutual "the right of priority in any recovery of monies . . . up to the sum of $67,227.12." *Id.* at 540. This court reversed on two grounds.

¶ 26. First, the court laid out the theory of subrogation and the made whole doctrine. It spoke of the concern about unjust enrichment. *Id.* at 541. It explained that under common law subrogation, "the subrogor (here the insured) must be made whole before the subrogee (insurance company) may recover anything from the tort-feasor." *Id.* It reasoned that "a surety who is subrogated upon partial payment of the debt [or loss] becomes a competitor with the creditor (here the insured)" and that "where either the insurer or the insured must to some extent go unpaid, the loss should

be borne by the insurer for that is a risk the insured has paid it to assume." *Id.* at 542. The court also stated pointedly:

> This court has held that subrogation is recognized or denied upon equitable principles without differentiation between "legal subrogation" which arises by application of principles of equity and "conventional subrogation" arising from contract or the acts of the parties. *American Ins. Co. v. Milwaukee,* 51 Wis.2d 346, 351, 352, 353, 187 N.W.2d 142 (1971). Thus it has been held that the conventionally subrogated or contractual insurer has no share in the recovery from the tort-feasor if the total amount recovered by the insured from the insurer does not cover his loss.

*Id.* at 543–44.

¶ 27. Consequently, under basic principles of subrogation, whether the subrogation is "legal" or "conventional," the insurer is not entitled to recoup anything until the insured has been made whole. *Id.*

¶ 28. Second, having clearly stated the law, the court made the additional observation that the subrogation clause in the policy before the court did not contravene the made whole doctrine. It said, "We conclude that the subrogation clause contained in the standard fire insurance policy and set forth above did not change the substantive common law rights of the insured." *Id.* at 541. "We find nothing in this subrogation clause that changes the common law rule." *Id.* at 544. Then the court went on to say, "We hold that because the contract here contains no language to the contrary, the normal rule of subrogation [that is, the made whole doctrine] applies and the subrogee has no right to share in the fund recovered from the tort-feasor until the subrogor is made whole." *Id.* at 546–47.

¶ 29. In retrospect, the phrase "because the contract here contains no language" is unfortunate because it undercuts the force of the court's earlier analysis. Humana has seized upon this phrase as the foundation of its case, suggesting that the phrase hints that an insurer might be able through "conventional subrogation" to override or negate the made whole doctrine.

¶ 30. Humana's theory was resoundingly rejected, however, in *Rimes,* 106 Wis. 2d 263, which was decided five years after *Garrity.* In *Rimes,* this court precluded the possibility of contractual language overriding the made whole doctrine.

¶ 31. Palmer Rimes was injured as he was offering assistance to the occupants of two cars involved in an accident. *Id.* at 265. As Rimes tried to help, a third car struck one of the two cars, and Rimes was severely injured. *Id.* Rimes and his wife (collectively "Rimes" or "the insured") had a liability policy issued by State Farm Mutual Insurance Company, under which State Farm paid $9,649.90 in medical expenses. *Id.* at 265–66. The State Farm policy contained a subrogation clause, and Rimes signed a subrogation receipt. *Id.* Rimes brought suit against the drivers of each of the other three vehicles, and State Farm was joined as a defendant because of its subrogation rights. *Id.* at 265.

¶ 32. During the trial, Rimes settled with the tortfeasors for $125,000. *Id.* at 267. State Farm signed the stipulated settlement. *Id.* State Farm then sought to recover the $9,649.90 it paid for Rimes' medical expenses from the Rimes' settlement. *Id.* In a trial to the court, the circuit court determined that Rimes incurred total damages of $300,433.54, far greater than the $125,000 settlement. *Id.* at 264–65. The circuit court therefore concluded that pursuant to *Garrity,*

Rimes had not been made whole and State Farm could not recover its medical expense payments. *Id.* at 265.

¶ 33. State Farm appealed and the court of appeals certified the case to this court. We accepted certification "[b]ecause it was at least arguable that *Garrity* might not be precedential for the [Rimes] case." *Id.* at 269. We stated the issue as follows:

> [W]hether an automobile insurer . . . which, under a subrogation agreement signed by its insured . . . has made payment under the medical-pay provisions of its policy, has the right to recover those payments out of the monies received by its insured in a settlement with negligent third-party tortfeasors and their liability insurers, when, . . . the settlement figure was less than the total damages sustained by the insured . . . .

*Id.* at 264.

¶ 34. The court examined the subrogation agreement in the policy issued by State Farm, which stated:

> Upon payment . . . the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person . . . may have against any person . . . and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

*Id.* at 266.

¶ 35. The court compared this subrogation agreement to the one in *Garrity*, stating: "The subrogation agreement in the instant case between Rimes and State Farm is not significantly dissimilar and if literally interpreted would permit recovery by State Farm in the amount of medical payments made on behalf of Rimes." *Id.* at 270.

¶ 36. The court did not rely on the text of the subrogation clause; it relied on the salient principles of *Garrity*. It held that while the facts in *Rimes* were "not on all fours" with those in *Garrity,* "the principles set forth [in *Garrity*] are applicable and are decisive." *Id.* It therefore affirmed the circuit court's determination that the made whole rule applied, and barred State Farm's recovery until the insured was fully compensated. *Id.*

¶ 37. The court in *Rimes* noted that it had determined in *Garrity* that conventional subrogation (contractual subrogation) had the same effect as legal subrogation (equitable subrogation), so "accordingly, the contractual terms of subrogation agreements in an insurance policy were to be applied according to the rules of equity." *Id.* at 271. It further stated, "Wisconsin has long held . . . an insurer claiming subrogation under contract . . . is to be allowed no share in the recovery from the tortfeasor if the total amount recovered by the insured from the insurer and the wrongdoer does not cover his entire loss." *Id.* at 271.

¶ 38. The court summarized Wisconsin's law of subrogation, stating, "It appears clear that, under Wisconsin law as recapitulated in *Garrity,* one who claims subrogation rights, whether under the aegis of either legal or conventional subrogation, is barred from any recovery unless the insured is made whole." *Id.* at 272.

¶ 39. The effect of the *Rimes* decision was underscored by one of the dissenting justices, Donald W. Steinmetz. Justice Steinmetz said that *Garrity* had two holdings, the second of which was that "because the contract here contains no language to the contrary, the normal rule of subrogation applies and the subrogee has no right to share in the fund recovered from the tort-feasor until the subrogor is made whole." *Id.* at 286

294

(Steinmetz, J., dissenting) (quoting *Garrity,* 77 Wis. 2d at 546–47). He asserted that the second holding implied the possibility that contractual language "could influence" or override the equitable principles of subrogation. He then admitted that the majority had given "short shrift" to that possibility. *Id.* He summarized the *Rimes* holding as requiring that the insured must be made whole before an insurer has any right of recovery. *Id.* at 290.

¶ 40. We conclude that the impact of *Garrity* and *Rimes* upon this case is indisputable: Justin Ruckel suffered damages of more than $450,000. Humana contributed about $87,000 to Ruckel's medical expenses. Notwithstanding a specific, unambiguous subrogation clause in the Humana-administered group benefit plan that gave the plan superior rights of subrogation over Ruckel's right to be made whole, the plan may not recover any of the $86,626.01 in medical expenses it paid out until Ruckel has been made whole.

¶ 41. Humana contends that the language of the subrogation clause is unambiguous and that its intent is absolutely clear. This argument misses the point. The clause is not unclear; it is inequitable. It is contrary to the most fundamental precepts of subrogation. Subrogation in this circumstance would not avoid double recovery or prevent unjust enrichment of the insured. It would authorize incomplete recovery for the insured and shift loss from the insurer, who was paid to assume loss, to the insured, who paid to protect against loss.[6] As

------

[6] We acknowledge that some sticky issues are raised when the insured has contributed to his or her own loss, *Sorge v. Nat'l Car Rental Sys., Inc.,* 182 Wis. 2d 52, 512 N.W.2d 505 (1994), or when the insured settles the case for an amount less than the

the Wisconsin Academy of Trial Lawyers correctly notes in its brief as amicus curiae, subrogation on these facts would turn "the entire doctrine of subrogation on its head."

¶ 42. Humana also argues that the equities in this case tilt toward the plan, because it is a group insurance benefit plan self-funded by the taxpayers of Mayville, a small school district. However appealing these arguments may be, they are better addressed to a legislative body.[7]

## CONCLUSION

¶ 43. For the reasons stated above, we hold that pursuant to this court's holdings in *Garrity* and *Rimes,* an insurer is not entitled to subrogation against its insured unless and until the insured is made whole, regardless of contractual language to the contrary. We therefore affirm the decision of the circuit court.

alleged total damages without involving the subrogated insurer, *Ives v. Coopertools,* 208 Wis. 2d 55, 559 N.W.2d 571 (1997). These issues are not present in this case.

[7] In some instances, legislatively-sanctioned subrogation may override the made whole principles discussed in this case. Some examples include: (1) self-funded employee pension and benefit plans under The Federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (*see FMC Corp. v. Holliday,* 498 U.S. 52, 58–65 (1990); *Petro v. D.W.G. Corp.,* 148 Wis. 2d 725, 727–28, 436 N.W.2d 875 (Ct. App. 1989)); (2) government subrogation rights for certain public assistance payments under Wis. Stat. § 49.89 (formerly Wis. Stat. § 49.65) (*see Waukesha County v. Johnson,* 107 Wis. 2d 155, 320 N.W.2d 1 (Ct. App. 1982)); and (3) subrogation rights in worker's compensation cases under Wis. Stat. § 102.29(1) (*see Martinez v. Ashland Oil,* 132 Wis. 2d 11, 390 N.W.2d 72 (Ct. App. 1986)).

*By the Court.*—The judgment of the circuit court is affirmed.